UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 3:06cr268 (JBA) |
| *v.* | April 20, 2020 |
| MILTON ROMAN | |

**RULING GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION
AND ORDER OF RELEASE**

On November 4, 2019, the Court denied Defendant Milton Roman's request for relief under Section 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). (Nov. 4, 2019 Ruling [Doc. # 1821] at 12.) The Court concluded that he was eligible for relief because he had committed a "covered offense" as defined by the First Step Act. (*Id.* at 8.) However, the Court determined Mr. Roman, who had been sentenced to a 240-month mandatory minimum term of imprisonment, remained subject to that mandatory minimum as a result of his plea of guilty to a dual-object conspiracy, which expressly involved five kilograms of powder cocaine, in violation of 21 U.S.C. § 841(b)(1)(A), to which his 21 U.S.C. § 851 enhancement for a prior narcotics felony still applied. (*Id.* at 12.)[1] The Court thus concluded that it lacked authority to grant a sentence reduction in this case.

---

[1] The Court otherwise assumes the parties' familiarity with the background of this case.

Defendant now moves for reconsideration of that ruling. (Def.'s Mot. Recons. [Doc. # 1827].) Because ambiguity exists as to whether Defendant pleaded and was sentenced to both objects of the charged drug conspiracy, Defendant's motion is granted.

## I.   Standard of Review

Motions for reconsideration require the movant to set "forth concisely the matters or controlling decisions which [the movant] believes the Court overlooked in the initial decision or order." D. Conn. L.R. 7(c)1. The Second Circuit has explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 4478). This standard is "strict," however, and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). If "the moving party seeks solely to relitigate an issue already decided," the court should deny the motion for reconsideration and adhere to its prior decision. *Id.*

## II.  Discussion

Defendant contends that reconsideration is warranted because the Court "overlooked settled precedent regarding multi-object conspiracies" and "overlooked the defendant's argument that the Government presented insufficient evidence to sustain the 851 enhancement based on the New York conviction." (Def.'s Mot. Recons. at 2, 7.) The Court will address each argument in turn.

a. *Dual-Object Conspiracy*

In the November 4, 2019 ruling, the Court recounted that Mr. Roman had pleaded guilty to conspiring to possess with intent to distribute 50 grams or more of cocaine base ("crack") and five kilograms or more of powder cocaine and that each of these quantities was covered by 21 U.S.C. § 841(b)(1)(A) at the time of his sentencing. (Nov. 4, 2019 Ruling at 9.) The Court determined that, under the changes made by the First Step Act,[2] the crack portion of Defendant's sentence was properly reclassified to the lesser offense of § 841(b)(1)(B). (*Id.*) But the Court then reasoned that it could not grant relief because it had to account for the powder cocaine portion of Defendant's offense, for which the statutory penalties remained unchanged and necessarily in effect.

In his motion for reconsideration, Defendant argues that, although "the superseding indictment charged conspiracy to possess with intent to distribute and distribution of more than 50 grams of cocaine base and more than five kilograms of cocaine," the true "object of the conspiracy was possession with intent to distribute and distribution of cocaine base." (Def.'s Mot. Recons. at 3.) Defendant had originally argued in support of his First Step Act motion that, at the time of his plea and sentencing, "all discussions centered on the total amount of crack cocaine – to which the powder cocaine quantities were converted (or cooked)." (Def.'s Mem. Supp. First Step

---

[2] The First Step Act gave retroactive effect to the Fair Sentencing Act of 2010, which was enacted "[i]n response to substantial public opinion that the disparities in the statutory penalties imposed for offenses involving powder cocaine and crack cocaine were fundamentally unfair" and reduced those "disparities by increasing the drug quantities triggering mandatory minimums for crack offenses 'from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10–year minimum.'" *United States v. Rose*, 379 F. Supp. 3d 223, 226 (S.D.N.Y. 2019) (quoting *Dorsey v. United States*, 567 U.S. 260, 269 (2012)).

Act Mot. [Doc. # 1786] at 10.) Defendant asserts that "at sentencing, the Government underscored that the object of the conspiracy and the controlling offense was conspiracy to possess with intent to distribute and distribution of more than 50 grams of cocaine base." (Def.'s Mot. Recons. at 3.) Defendant has previously represented in his unsuccessful § 2255 motion that "[d]uring the accepting of the plea agreement process, [he] informed [his] counselor . . . that he was not guilty of selling [five] kilograms or more of [c]ocaine powder and counsel again stated to [him] that the [five] kilograms or more [of cocaine powder] were only used to establish the sentencing range for the 50 grams or more of Cocaine Base." (Motion Under 28 U.S.C. § 2255, *Roman v. United States*, 3:13-cv-00432-JBA, ECF No. 1, at 6 (D. Conn. Feb. 24, 2015) (referencing Plea Transcript [Doc. # 1486] at 5, claiming the conversation occurred "[w]here Roman and [counselor] Bansley confer off the record").) Defendant argues that in light of the above, the Court misapplied the law and overlooked the precedent of *United States v. Berger*, which held that, in the context of a multi-object conspiracy, it is necessary "only to prove agreement on one of the objectives charged in the indictment in order to establish that a conspiracy existed." 224 F.3d 107, 113 (2d Cir. 2000).

In response, the Government maintains that the Court was correct to conclude that "First Step Act relief was precluded by the fact that one of the objects of the conspiracy lay outside the Act's coverage," as "the defendant explicitly and knowingly pled guilty to, and was sentenced for, a drug trafficking conspiracy consisting of two objects, one covered by the First Step Act (possession with intent to distribute 50 or more grams of a mixture containing cocaine base), and one not covered by the Act (possession with intent to distribute five or more kilograms of a mixture containing cocaine)." (Gov't Opp. to Def.'s Mot. Recons. [Doc. # 1834] at 1.) The Government cites other courts around the country that have similarly reached the conclusion that First Step Act relief is unavailable "where a multi-object drug trafficking conspiracy involves both cocaine base

and one or more other drugs, and where the quantity of the other drug(s) calls for the same penalties as the pre-First-Step-Act cocaine base offense." (*Id.* at 2-3 (collecting cases).)

Since the Court issued its November 4, 2019 ruling, other courts have approached First Step Act motions involving multi-object conspiracies by examining the record and determining whether "the conviction is ambiguous as to whether it involved crack cocaine, [powder cocaine], or both." *United States v. Jones*, 2020 WL 886694, at *2 (D. Md. Feb. 24, 2020); *see also United States v. Montgomery*, 2020 WL 736219, at *2 (E.D. Mich. Feb. 13, 2020) (deeming defendant eligible for First Step Act relief because "the jury did not differentiate between cocaine powder and cocaine base"); *accord United States v. Barber*, 2019 WL 2526443, at *2 (D.S.C. June 19, 2019) (applying rule of lenity and granting First Step Act relief where "there were no questions or admissions regarding [the] powder cocaine" portion of the charged dual-object conspiracy during the plea colloquy). Where the records in these cases have demonstrated that the basis for the conviction is ambiguous as to the non-crack portion, these courts have then "appl[ied] the rule of lenity."[3] *Jones*, 2020 WL 886694, at *2. Thus, these courts have "assume[d the defendant] was convicted only of conspiracy to distribute crack cocaine under § 841(b)(1)(iii)—a provision clearly modified by the Fair Sentencing Act," allowing the defendant to obtain relief under the First Step Act. *Id.* Application of this approach is demonstrated in *United States v. Carrie*, where, as here, the First Step Act movant had previously "entered into an Amended Plea Agreement to plead guilty [to] Count 1, conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base," and received an enhanced § 851 sentence. 2019 WL 3493832, at

---

[3] "[T]he rule of lenity tips the scales in favor of the defendant by requiring the court to impose the lesser of two penalties." *Sash v. Zenk*, 439 F.3d 61, 64 (2d Cir. 2006) (cleaned up).

*1 (D.S.C. Aug. 1, 2019). The *Carrie* court reviewed the defendant's record of conviction and determined:

> The Amended Plea Agreement stated he agreed to plead to Count 1, which charged conspiracy to possess with intent to distribute and to distribute both cocaine and cocaine base. Although the court used "and" several times in the plea colloquy, when questioning Defendant regarding his admission, the court stated "do you admit that you either personally distributed five kilos or more of cocaine <u>or</u> 50 grams or more of crack?" (emphasis added).[4] Therefore, in the light most favorable to Defendant, he could have admitted guilt only to conspiracy to possess with intent to distribute 50 grams or more of cocaine base, rendering him eligible for relief under the First Step Act.

*Id.* at *2. The *Carrie* court then concluded from this record that the defendant was now subject to a "new statutory range" of "10 years to Life and a supervised release term of eight years." *Id.* at *4. This Court believes that the approach followed by *Carrie* is appropriate here.

The Court will now review facts that it had not fully considered the significance of when taking its previous approach. In this case, the presiding judge, the late Hon. Peter C. Dorsey, explained at the outset of the plea hearing and prior to the plea's entry that he was not

---

[4] The relevant part of the *Carrie* colloquy is as follows:

The court: All right. Mr. Carrie, do you admit that you were involved with Mr. Mendoza in a cocaine and crack conspiracy?
Mr. Carrie: Yes, ma'am.
The court: Do you admit that you did it knowingly?
Mr. Carrie: Yes, ma'am.
The court: You knew what you were doing?
Mr. Carrie: Yes, ma'am.
The court: And do you admit that you either personally distributed five kilos or more of cocaine or 50 grams or more of crack?
Mr. Carrie: Yes, ma'am.

*Carrie*, 2019 WL 3493832, at *2.

"differentiat[ing] between the two" separate drugs and that he would instead "simply lump[ them] together and deal[] with [them] as – in effect, as one amount" for the purposes of calculating Defendant's sentence. (Plea Transcript at 5-6.)[5] When the Government summarized what evidence it would present at trial as proof, it focused on the crack-trafficking conspiracy, stating that it "would present evidence that the Defendant engaged in controlled transactions of cocaine base" involving a total of 20 ounces and that it would "offer wiretap phone calls" with customers to whom Defendant would "sell everything from a $50 bag of crack up to multi-ounce quantities." (*Id.* at 29-30.) The Government's only specific reference to powder cocaine was to note that law enforcement had "seized 350 *grams* of powder cocaine from [a] Co-Defendant." (*Id.* at 31 (emphasis added).) Following the Government's summary, Judge Dorsey told Defendant, "I'm not asking you to agree with everything that [the Government] has said, Mr. Roman. I want you to understand that." (*Id.* at 32.) After this clarification, Judge Dorsey then proceeded:

> [M]y question to you at this moment is based upon what you told me a few minutes ago, and what [the Government] has summarized in the way of the evidence that would be offered at a trial. Do you agree that your conduct during the time period in question . . . that you, in various ways, in conjunction with one or more others did, in fact, participate in the conspiracy to possess with intent to distribute, and distribute cocaine and crack cocaine?

(*Id.*) Defendant responded, "Yes, Sir," to this question. (*Id.* at 33). He was not asked to further describe his conduct in his own words. Immediately thereafter and prior to Mr. Roman's entry of his guilty plea, Defendant's counsel "state[d] for the record that there was some confusion on Mr.

---

[5] This statement by Judge Dorsey is consistent with Defendant's representation that he "understood the controlling offense to involve 50 grams or more of cocaine base, and that reference to five kilograms of cocaine was 'to [establish] a sentencing range'" and offense level under the Sentencing Guidelines. (Def.'s Mot. Recons. at 5.)

Roman's part by the representations made by the Government," and that Mr. Roman did "not necessarily . . . agree with" some of the Government's statements as to the evidence that it intended to present. (*Id.*) Defendant was not asked to articulate his disagreement with the Government's summary. Later in the proceeding but again before Defendant entered his guilty plea, Defendant's counsel brought up Defendant's "confusion" for a second time. (*Id.* at 36-37.) Judge Dorsey responded by agreeing that Defendant would have the opportunity to explain his actions at the time of sentencing and stating "[t]hat's why I tried to emphasize to you that I'm not asking you to agree that you did everything that [the Government] has claimed." (*Id.* at 37.) Judge Dorsey then proceeded to put Defendant to plea. The Court Clerk asked, without identifying the drug quantities charged, "as to Count One of the Superseding Indictment, charging you with a violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(A) and 846, what is your plea?" to which Defendant responded, "Guilty." (*Id.* at 39.)

From this plea transcript, it is evident that the Judge Dorsey told Defendant that he was not assigning independent significance to the powder cocaine, that Judge Dorsey advised Defendant that he could disagree with the Government's account while still pleading to the elements of the charged conspiracy, and that Defendant was "confus[ed]" as to what conduct was covered by his guilty plea. This Court now concludes that the transcript is unclear as to whether Defendant was pleading guilty only to the elements of 21 U.S.C. § 841(b)(1)(A) or whether Defendant was specifically admitting to all of the conduct conjunctively charged in the superseding indictment.[6]

---

[6] In making this determination, the Court acknowledges that, as in *Carrie*, "the court used 'and' several times in the plea colloquy." 2019 WL 3493832, at *2. As the Court recounted in its prior ruling, Judge Dorsey "referred to both the crack and powder quantities of cocaine" on multiple occasions during the plea proceeding. (Nov. 4, 2019 Ruling at 3.) Thus, the question here is somewhat closer. But "taking the plea colloquy in the light most favorable to Defendant," *Carrie*,

Case 3:06-cr-00268-JBA   Document 1844   Filed 04/20/20   Page 9 of 15


Moreover, the Presentence Report ("PSR") [Doc. # 1776-2] consistently treats this as a crack cocaine case, further supporting the view that powder cocaine did not play a standalone role in the drug distribution offense. The PSR identifies the offense only as "Conspiracy to Possess With the Intent to Distribute and Distribution of 50 Grams or More of Cocaine Base," without reference to five kilograms of powder cocaine. (PSR at 1.) In setting forth the "Charge(s) and Conviction(s)," the PSR states that "Mr. Roman entered a guilty plea to Count One of the Superseding Indictment . . ., which charges Conspiracy to Possess with the Intent to Distribute and Distribution [of] 50 Grams or More of Cocaine Base," again without any reference to a plea independently based on the distribution of five kilograms of powder cocaine. (*Id.* ¶ 1; *see also id.* ¶ 94 ("Mr. Roman entered a guilty plea to Count One of the Superseding Indictment . . . , which charges Conspiracy with the Intent to Distribute and Distribution of Cocaine Base[.]").) And in laying out the "Offense Conduct," the PSR states that "it was apparent that Roman purchased large quantities of powder cocaine and *converted these quantities to crack cocaine for redistribution* to others." (*Id.* ¶ 15 (emphasis added).) The PSR also notes that the "powder cocaine that Mr. Roman was responsible for[] does not impact the base offense level," and accordingly calculated the base offense level using only the crack quantity. (PSR ¶¶ 16, 22.)

The sentencing transcript also illustrates how the powder cocaine quantity was blended into the crack distribution conspiracy conviction. When the Government was asked for its view as to the drug quantity calculation for the purposes of determining the Guidelines range, it stated:

> So, putting aside everything else, we're in that 1.5 to 4.5 kilo range [for the crack cocaine]. The fact that [Defendant] agreed at the plea, the guilty plea to the 5 kilograms or more of powder, to me, was a stipulation which allows us to say, "No,

2019 WL 3493832, at *3, the Court concludes that the foregoing features of the colloquy create sufficient ambiguity as to the exact nature of Defendant's plea.

it's actually higher than four and half kilos of crack because we know you were cooking what you bought in powder.["] Although he was selling powder, he was mostly selling crack.

(Sentencing Transcript [Doc. 1459] at 16-17.) Although the Government has since characterized this comment as "simply a mathematical extrapolation from the defendant's admissions at the plea hearing," (Gov't Resp. to Def.'s First Step Act Mot. [Doc. # 1793] at 14 n.3), the statement itself seems to provide direct support to Defendant's argument that he, the Government, and the Court all essentially conceptualized the powder portion of the offense as integrated conduct relevant to the crack conspiracy.[7] In fact, the Judgment [Doc. # 1444] itself only references the 50-gram quantity of cocaine base.

Taking this record "in the light most favorable to Defendant" and "[a]pplying the rule of lenity[]," the Court concludes that Defendant's sentence was driven by his crack cocaine conviction. *Carrie*, 2019 WL 3493832, at *3 (footnote omitted); *see also United States v. Opher*, 404

---

[7] The Court notes that this Defendant has consistently made the argument that, in pleading guilty to the crack cocaine conspiracy, he did not understand the powder cocaine portion of the charge to have a separate meaningful effect.

In his § 2255 motion, Defendant contended that his right to effective representation was violated when, during plea bargaining, his counsel "told him to lie and admit to having been responsible for more than 5 kilograms of Cocaine Hydrochloride because if he did not do so he might receive a life sentence and, also, that it was the 'equivalent' of 50 grams of Cocaine Base; thus it made no difference." (Def.'s Reply to Gov't Opp. to Motion Under 28 U.S.C. § 2255, *Roman v. United States*, 3:13-cv-00432-JBA, ECF No. 23, at 6 (D. Conn. Jan. 13, 2014).)

Assuming *arguendo* that such an instruction could amount to ineffective assistance of counsel, the Court ultimately concluded that Defendant was not prejudiced by this alleged error because Defendant had "expressly admit[ted] that he was guilty of conspiring and distributing 50 grams or more of cocaine base," which on its own triggered the twenty-year mandatory minimum. (Order Denying § 2255 Motion, *Roman v. United States*, 3:13-cv-00432-JBA, ECF No. 32, at 3 (D. Conn. Feb. 24, 2015) (cleaned up).)

F. Supp. 3d 853, 865 (D.N.J. 2019) ("[T]his Court is entitled to look at what drove the original sentence in this case—the successful prosecution of these defendants as dealers in both types of cocaine, who throughout the conspiracy 'cooked' powder cocaine into crack."). Thus, Mr. Roman's conviction will now be deemed governed by 21 U.S.C. § 841(b)(1)(B).

In reconsidering its earlier conclusion, the Court notes that the majority of courts that have addressed First Step Act motions involving similar dual-object conspiracies have denied relief based on the plea of record without considering any claim of ambiguity in the underlying plea. *See, e.g.*, *United States v. Barber*, 2020 WL 373982, at *2 (N.D. Fla. Jan. 22, 2020) (denying First Step Act Relief due to powder cocaine conviction); *United States v. Spencer*, 2019 WL 3369794, at *2 (D. Minn. July 26, 2019) (similar); *United States v. Jones*, 2019 WL 1560879, at *2 (S.D. Ala. Apr. 9, 2019) (similar).

However, the Court believes that the approach followed in *Jones* and *Montgomery* better gives effect to the First Step Act's remedial purpose in this case. Indeed, "[t]o preclude defendants from seeking relief on the basis of facts that may have had little significance at the time they were determined would be draconian and contrary to th[at] remedial purpose." *Rose*, 379 F. Supp. 3d at 229-30. Here, it is at best ambiguous as to whether the parties and the court, at the time of sentencing, contemplated that the superseding indictment and plea agreement's references to the five kilograms of powder cocaine would have an effect beyond the Guidelines calculation, as it was sufficient for guilt on the conspiracy count for the parties to focus on the controlling crack allegation. However, what is clear from the record here is that Mr. Roman conspired to possess powder cocaine to convert it into crack cocaine for the purposes of distributing that *crack cocaine*. The investigation into him used controlled buys and wiretaps to establish is crack distribution activities, and the conviction record focuses on that conduct. As the Court has previously stated, a

crack cocaine dealer like Mr. Roman is "exactly the type of individual whom Congress envisioned when it passed the First Step Act." (Nov. 4, 2019 Ruling at 12.)

In addition to giving full effect to the facts in the record, the Court also believes that this approach better comports with the reality of multi-object charges. It is well settled that, when prosecuting a multi-object conspiracy, "the government need[] only to prove agreement on one of the objectives charged in the indictment in order to establish that a conspiracy existed." *Berger*, 224 F.3d at 113. When dealing with a corollary of this principle in *Young v. Holder*, the Ninth Circuit held that "when either 'A' or 'B' could support a conviction, a defendant who pleads guilty to a charging document alleging 'A and B' admits only 'A' or 'B,'" as "[t]he fact that a guilty plea admits all elements necessary to sustain a conviction does not imply that it also admits all unnecessary or duplicative elements charged as alternative theories of the crime." 697 F.3d 976, 987-88 (9th Cir. 2012), *overruled on other grounds by Marinelarena v. Barr*, 930 F.3d 1039 (9th Cir. 2019). Applying this principle, it would be incorrect for the Court to conclude that Defendant's plea admitted to conduct involving *both* the crack and the powder and to thus bar him from First Step Act relief.

In sum, the Court concludes that Defendant should now be subject to the penalties of 21 U.S.C. § 841(b)(1)(B).

b.  *Section 851 Enhancement and Plenary Resentencing*

In its November 4, 2019 ruling denying resentencing relief under the First Step Act, the Court also considered Defendant's challenge to his § 851 notice, which enhances the mandatory minimum sentence under both 21 U.S.C. § 841(b)(1)(A) and § 841(b)(1)(B). (*See* Nov. 4, 2019

Ruling at 10.)[8] Rather than reach the question of whether the First Step Act permitted a plenary resentencing hearing where this enhancement might be challenged, the Court explained that such a hearing would be futile as the Second Circuit had "previously ruled that [Defendant's] conviction [under N.Y. Penal L. § 220.16] was a proper § 851 predicate." (*Id.* at 11 (citing *United States v. Roman*, 464 F. App'x 32, 35 (2d Cir. 2012).)

In his motion for reconsideration, Defendant argues that the § 851 notice was not supported by evidence. However, the Court need not address this argument, because it is of the view that the First Step Act *does not* authorize a plenary resentencing hearing where a court may "revisit and disturb previously imposed statutory enhancements." (Supplementary Ruling, *United States v. Ortiz*, No. 3:06-cr-268-JBA-26, ECF No. 1840, at 6 (D. Conn. Mar. 31, 2020).) Because the First Step Act only permits a Court to conduct a more limited resentencing where it "plac[es] itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act," Defendant's attempt to challenge the validity of his § 851 enhancement is unavailing. (*Id.* (quoting *United States v. Hegwood*, 934 F.3d 414, 417 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 285 (2019)).)

c.  *Availability of First Step Act Relief*

Having concluded that Defendant is now subject to the penalties of 21 U.S.C. § 841(b)(1)(B) but that his § 851 enhancement still applies, the Court now considers what First Step Act relief is appropriate.

---

[8] As the Court will later address, a § 851 notice of a defendant's prior conviction filed in a 21 U.S.C. § 841(b)(1)(B) prosecution increases the mandatory minimum from five years to ten years.

Under 21 U.S.C. § 841(b)(1)(B), an offender with a prior conviction "shall be sentenced to a term of imprisonment which may not be less than 10 years." *Id.* Mr. Roman has already served more than thirteen years in prison. As previously explained in the November 4, 2019 ruling, the Court views his current sentence of twenty years imprisonment as a severe punishment for Mr. Roman's drug offense. Further, "Defendant's correctional record demonstrates that he is a model inmate, who is potentially well-equipped to productively reenter society." (Nov. 4, 2019 Ruling at 12.) Thus, the Court concludes that Mr. Roman's thirteen-year period of incarceration is "adequate to serve the purposes of the § 3553(a) factors—namely, the seriousness of Defendant's offense, respect for the law, just punishment, deterrence, and protection of the public—without being greater than necessary." *United States v. Napper*, 2019 WL 4727500, at *2 (D. Conn. Sept. 27, 2019).[9] A reduction of Mr. Roman's sentence to time served will serve the purposes of the First Step Act and the interests of justice.

Section 841(b)(1)(B) also requires that an offender subject to an § 851 enhancement be sentenced to a "term of supervised release of at least 8 years." Mr. Roman was originally sentenced to a mandatory minimum supervised release term of ten years. For the same reasons that it reduces

---

[9] Although not contemplated by the § 3553(a) factors, "the court must acknowledge the extraordinary circumstances present in the community as a result of the COVID-19 pandemic." *United States v. Collins*, 2020 WL 1506176, at *2 (D. Md. Mar. 30, 2020). As one court recently noted when granting a First Step Act motion, "while the risks posed by a defendant's continued residence in a detention facility do not necessarily mandate release when weighed against all the factors the court must consider, here we have, as described above, a non-violent drug offender who has already served a lengthy sentence," and public health considerations weigh in favor of his immediate release. *Id.*; *see also United States v. Nkanga*, 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) ("The country faces unprecedented challenges from the novel Coronavirus ('COVID-19') pandemic. Those detained in jails and prisons face particularly grave danger. . . . Realistically, the best — perhaps the only — way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible.").

Mr. Roman's carceral sentence, the Court will also reduce his term of supervised release to the newly applicable mandatory minimum of eight years.

### III. Conclusion

Accordingly, Defendant's motion for reconsideration ([Doc. # 1827]) is **GRANTED** to prevent manifest injustice. The Defendant's previously imposed sentence of imprisonment of 240 months is reduced to time served on Count One of the Indictment, satisfying the enhanced 120-month minimum requirement of 21 U.S.C. § 841(b)(1)(B). The Defendant's term of supervised release of 120 months is reduced to 96 months and is further modified to require that he serve the first six months in a halfway house. The Bureau of Prisons is directed to release the Defendant to a halfway house in Connecticut as soon as possible. On arrival at the halfway house, Defendant shall self-quarantine, as feasible, for no less than 14 days. All other provisions of the judgment dated February 18, 2010 shall remain in effect.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 20th day of April 2020.

15